# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Titeflex Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Design By Analysis, Inc.,<br>TFS-Technologies,<br>Leonard Discenza,<br>Mehdi Golafshani, Eric Voide and<br>Rivo Consulting Group,<br><br>    Defendants. | )<br>)<br>)<br>)   Civil Action No. 06-30027-MAP<br>)<br>)   (Jury Trial Demanded)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED COMPLAINT
### SEEKING INJUNCTIVE RELIEF AND DAMAGES
### AND REQUEST FOR JURY TRIAL

Plaintiff Titeflex Corporation brings this Complaint against individual Defendants Leonard Discenza, Mehdi Golafshani and Eric Voide, and their respective companies Design By Analysis, Inc. ("DBA"), TFS-Technologies, and Rivo Consulting Group (collectively, "Defendants"), for misappropriating and marketing Titeflex's proprietary technology and confidential information for unfair commercial advantage.

### Parties

1. Plaintiff Titeflex Corporation ("Titeflex") is a corporation organized under the laws of the State of Connecticut. It maintains its principal place of business at 603 Hendee Street, Springfield, Massachusetts, 01139.

2. Defendant Design By Analysis, Inc. ("DBA") is, on information and belief, a corporation organized under the laws of the State of Connecticut, maintaining a place of business at 185 Main Street, Suite 147, New Britain, Connecticut, 06501.

3. Defendant Leonard S. Discenza is, on information and belief, an individual residing at 6 Nelson Drive, Burlington, Connecticut 06013, and is the President of DBA.

4. Defendant TFS-Technologies ("TFS") is, on information and belief, a business located at 11 Fox Run, Woodbury, Connecticut 06798.

5. Defendant Mehdi Golafshani claims to be the President and CEO of TFS and is, on information and belief, an individual residing at 11 Fox Run in Woodbury, Connecticut 06798.

6. Upon information and belief, Defendant Eric Voide is an individual residing at 40 Stevens Road, Middlebury, Connecticut 06762 and holds an interest in Defendant Rivo Consulting Group.

7. Upon information and belief, Defendant Rivo Consulting Group has a principle place of business at 40 Stevens Road, Middlebury Connecticut 06762.

## **Jurisdiction**

8. This Court has original jurisdiction over Plaintiff's Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Complaint also requests a declaration of inventorship and rights to patent inventions, as determined by the patent laws of the United States at 35 U.S.C. §100 *et seq.*, and thus this Court also has original jurisdiction over this matter pursuant to 28 U.S.C. § 2201-2202. Plaintiff's state law claims include a claim of unfair competition and arise out of the transactions and occurrences that are the subject matter of Plaintiff's Lanham Act and patent law claims. This Court thus has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a). The Court has independent jurisdiction over Plaintiff's unfair competition claims under 28 U.S.C. § 1338(b).

9. Each Defendant has engaged in business activity within this judicial district sufficient to vest this Court with personal jurisdiction over Defendants.

## Venue

10. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), in that a substantial part of the acts or omissions by Defendants giving rise to Plaintiff's claims occurred in this judicial district.

## Nature of Complaint

11. This is a suit for a declaration of inventorship and patent rights and for injunctive relief and damages for false representation of fact under Section 43(a) of the Lanham Act, misappropriation of confidential information and trade secrets, unfair competition, fraudulent and/or negligent misrepresentation, breach of contract, unfair business practices, and unjust enrichment resulting from Defendants' deceptive misappropriation of Plaintiff's proprietary technology and know how. Plaintiff seeks: a declaration that Plaintiff has exclusive patent rights to those inventions based upon its proprietary information, and specifically, at this time, those identified by United States Patent Application Numbers 11/183,189, 11/489,156, and 11/489,095 (the "Inventions"); an injunction ordering Defendants to assign all rights in the Inventions to Plaintiff and refrain from marketing the Inventions; and compensation for all damages that Plaintiff has suffered as a result of Defendants' illegal and inequitable conduct, including treble damages, costs, and attorneys' fees pursuant to section 35(a) of the Lanham Act (15 U.S.C. §§ 1117(a)) and chapter 93A of the Massachusetts General Laws.

## Factual Background

12. In early 2004, Gastite, a division of Titeflex, sought proposals for help in designing a special type of fitting for its corrugated stainless steel tubing products.

3

13. On June 14, 2004, as a condition for receiving information about the technology underlying the proposal, Defendant Leonard Discenza, DBA's President, signed a non-disclosure agreement with Titeflex ("the Non-Disclosure Agreement"). A true and accurate copy of the Non-Disclosure Agreement is attached hereto as Exhibit 1. Leonard Discenza and Mr. Golafshani subsequently signed additional non-disclosure agreements as a precondition to being granted access to the Titeflex facility ("the Confidentiality Agreements").

14. The Non-Disclosure Agreement expressly provided that it was binding upon the corporation of which Mr. Discenza was an officer and employee.

15. Among other provisions, the Non-Disclosure Agreement provided that the party to whom Titeflex disclosed proprietary information under the Non-Disclosure Agreement would not disclose that information. It also provided that, if any invention arose out of the party's relationship with Titeflex, the party would do what was necessary to transfer ownership of the invention to Titeflex.

16. In reliance upon the terms of the Non-Disclosure Agreement, Titeflex provided to Mr. Discenza and DBA proprietary information relating to the part for which Titeflex sought design assistance.

17. One week later, on June 21, 2004, DBA presented to Titeflex in Springfield, Massachusetts a proposal to help design the part ("the Presentation").

18. As part of the Presentation, DBA detailed its capabilities and experience.

19. In the section of the Presentation titled "Summary of Backgrounds of Key Personnel," DBA represented that Mr. Golafshani was a member of its "Management," and specifically its "Manager and Senior Technologist -- Analysis and Technology." The Presentation included a two-paragraph biography describing Mr. Golafshani's experience

4

and abilities. This biography further described him "[a]s a member of the DBA staff for the past four years." A true and accurate copy of this portion of the written Presentation is attached as Exhibit 2.

20. Either at the Presentation or shortly thereafter, Defendants gave Titeflex a DBA business card identifying Mr. Golafshani as DBA's "Director, Analysis and Technology" at DBA's address ("the Card"). A true and accurate copy of the Card appears below.



21. The Card is identical in overall appearance to the card Mr. Discenza, DBA's President, gave to Titeflex. A true and accurate copy of Mr. Discenza's card appears below.



**Leonard S. Discenza**
*President*

185 Main Street, Suite 417      (860) 224-9901
New Britain, Connecticut 06051      Fax (860) 224-8552
www.dbaworks.com      LDiscenza@dbaworks.com

*Product Design • FEA Analysis • Technical Services*

22. DBA's internet website biographies page listed Mr. Golafshani as an "Executive," with a title of "Manager and Senior Technologist - Analysis and Technology." It also contained the same two-paragraph biography as the Presentation, including the reference to Mr. Golafshani as a member of DBA's staff for the past four years.

23. The Confidentiality Agreements provided that Mr. Golafshani and Mr. Discenza agreed not to use or disclose information that Titeflex disclosed to them, or derived by them during their visits, unless that information was available from other lawful sources.

24. In reliance on DBA and Mr. Golafshani's representations about Mr. Golafshani's capacity as a DBA employee, its understanding that DBA had taken appropriate action to assure protection of Titeflex's proprietary information, and Mr. Golafshani's own written assurances in the Confidentiality Agreements that he would maintain the confidentiality of Titeflex's proprietary information, Titeflex allowed Mr. Golafshani to have access to its proprietary information.

25. Mr. Golafshani knew or should have known that the material disclosed to him during the course of his work on the project was Titeflex's proprietary information and that he accepted it with the agreement that it was to be kept confidential.

26. On information and belief, if Mr. Golafshani was an employee of DBA, he had an obligation to assign to DBA any rights he had in inventions to which he contributed in the course of his employment.

27. In reliance on the Non-Disclosure Agreement, Confidentiality Agreements and the representations of DBA, Mr. Discenza, and Mr. Golafshani, including that Mr. Discenza, DBA and Mr. Golafshani would protect Titeflex's proprietary information and assure that Mr. Golafshani would transfer to Titeflex and not disclose or use any intellectual property that arose in connection with DBA's relationship with Titeflex as required under the Non-Disclosure Agreement and Confidentiality Agreements, Titeflex sent DBA several purchase orders for, among other things, fitting concept development (collectively the "Development Contracts").

28. DBA accepted the Development Contracts and began work.

29. DBA never fulfilled the terms of the Development Contracts.

30. Mr. Golafshani worked pursuant to the Development Contracts under the direction of and in collaboration with Brian Kraft and Scott Duquette of Titeflex.

31. Mr. Kraft, Mr. Duquette, and Mr. Golafshani developed the Inventions on the basis of Titeflex proprietary information.

32. Titeflex subsequently prepared and filed United States Patent Application 11/183,189 ("the '189 application"), listing Mr. Golafshani, Mr. Duquette, and Mr. Kraft as inventors.

33. When requested by Titeflex to assign his rights in the '189 application to Titeflex in accordance with his obligations, Mr. Golafshani refused.

34. Mr. Golafshani also has refused to cooperate in the prosecution of the '189 application.

35. Titeflex has made written demand that DBA and Mr. Discenza comply with their obligation to take necessary steps to transfer and assign all rights in the Inventions to Titeflex and return all proprietary information. They also have failed to do so.

36. Mr. Golafshani has now claimed in writing to Titeflex that he was the sole inventor of the '189 application.

37. Unbeknownst to Titeflex, Mr. Golafshani then filed two additional patent applications for inventions that are based wholly on Titeflex's proprietary information, United States Patent Application 11/489,156 ("the '156 application") and United States Patent Application 11/489,095 ("the '095 application"). In both applications he improperly asserts that he is the sole inventor.

38. Upon information and belief, Mr. Golafshani has created a company called TFS-Technologies.

39. On September 26, 2005, in a letter on TFS-Technologies letterhead to the President of Titeflex, Mr. Golafshani offered to license the Inventions to Titeflex despite admitting that they had "come about as a result of [his] earlier collaboration with [Titeflex's] Gastite division." A copy of this letter is attached as Exhibit 3.

40. The letter falsely represented that the Inventions were already "patented."

41. The letter threatened to sell the Inventions to Titeflex's competitors.

42. Mr. Discenza now claims that DBA has no obligations to Titeflex under the Non-Disclosure Agreement or Confidentiality Agreements with respect to the Inventions, that neither he nor DBA has obligations with respect to Mr. Golafshani's claims to the Inventions, and that Mr. Golafshani was "a separate entity" with a "clear distinction" of interests from those of Mr. Discenza and his company.

43. Despite his obligations under the Non-Disclosure Agreement and Confidentiality Agreements, upon information and belief, Mr. Golafshani has disclosed Titeflex's proprietary fitting technology, including the Inventions, to third parties, including Titeflex's direct competitors.

44. Upon information and belief, Mr. Golafshani has disclosed Titeflex's proprietary information to Defendants Voide and Rivo Consulting Group, which in turn have further disclosed Titeflex's proprietary information to others for their own benefit, despite, upon information and belief, knowing that Mr. Golafshani had misappropriated Titeflex's trade secrets.

45. Rivo Consulting Group has advertised to at least one of Titeflex's competitors in the CSST fitting industry that those competitors would "own the intellectual property rights" to the advertised fitting designs, fitting designs that are wholly based on Titeflex's proprietary technology.

### COUNT I: Declaratory Judgment of Inventorship and Ownership

46. Titeflex repeats and realleges the allegations set forth in paragraphs 1 through 45 hereof.

47. Brian Kraft and Scott Duquette are joint inventors of the Inventions.

48. Mr. Kraft and Mr. Duquette have assigned their rights in the '189 application to Titeflex and are under obligation to assign their rights in any other inventions arising from their work for Titeflex, including the '156 and '095 applications.

49. Mr. Golafshani's claims of sole inventorship to the '189, '156, and '095 patent applications have challenged Mr. Kraft and Mr. Duquette's status as joint inventors, placing a cloud on Titeflex's patent rights to the Inventions and its ownership of the Inventions.